# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EARL E. MARSH, JR., | ) | CASE NO.  5:11cv1156 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| AL KERKIAN, et al, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is *pro se* plaintiff Earl E. Marsh, Jr.'s Complaint filed against the following former co-workers at Gasoline Alley: Al Kerkian, Susan Kerkian, Mike Milbert, Nedra Johnson and Dave Calendar. Mr. Marsh complains, in part, that the pay rate for African American employees at Gasoline Alley was lower than the pay rate for Caucasian employees. He seeks $25,000.00 in compensatory damages.

## Background

Mr. Marsh was hired as a cook by Gasoline Alley on July 9, 2008. In May 2009, he received a $1.00 per hour pay raise. Two other African American employees with longer terms of service at Gasoline Alley never received raises. "An incident occurred behind this, prompting Susan Kerkian to confront me and threaten to revoke my raise." (Compl. at ¶8.) Mr. Marsh told her she should do whatever she deemed necessary because he felt underpaid, regardless of the raise. He added that he intended to continue working toward his next pay raise.

After the alleged incident, Mr. Marsh's scheduled work hours were reduced drastically. He states he should have had an annual gross income of $16,640, but only grossed

$15,341.25 in 2009. He asks the Court whether Gasoline Alley ever paid an African American man more than $9.00 per hour or how it can explain its hiring and firing practices since the time he filed an earlier complaint?[1] He further directs the Court to examine and compare the paychecks of seven "European American" employees to his paycheck and those of three other African American employees. Mr. Marsh adds that all of Gasoline Alley's management positions are held by African Americans, but the salaries are not comparable with the seven European American employees at Gasoline Alley.

Mr. Marsh complained to Ms. Kerkian in May 2010 that new hires were receiving better schedules than he. He added that he no longer wanted to work "under the table" unless he received 80 hours "on the clock" per pay period. Four employees "ate up" hours he desperately could have used, but were all fired after he filed his initial complaint. Another employee was rehired after he filed his initial complaint.

Four months after filing the initial complaint, Mike Milbert signed an affidavit claiming he was Head Chef at Gasoline Alley. As such, he averred he was responsible for hiring and firing employees, including Mr. Marsh. Also, at that time, Mr. Milbert stated he was in the process of firing Mr. Marsh.

On June 16, 2010, Mr. Marsh was sent home from work by Dave Calenders. Mr. Calendars asked Mr. Marsh why he was so upset because "you will be back tomorrow, you are not fired." (Compl. at ¶ 19.) While riding his bicycle to work the next day, however, he was called by Mr. Milbert who stated Ms. Kerkian told him to take Mr. Marsh off the schedule. He

---

[1]  Mr. Marsh states he also filed "a Labor Law violations case being handled by attorney Edward Gilbert and that case is centered around the same issue Payroll." (Compl. at ¶3.) The Court is not aware of which agency or in what court Mr. Marsh has filed his other case. Because Mr. Marsh refers to the case as his "initial complaint," the Court will also refer to it as such.

states Ms. Kerkian fired him via text message.

Attached to the Complaint is an Ohio Civil Rights Commission Charge of Discrimination, dated June 17, 2010, which Mr. Marsh filed against Gasoline Alley. The charge states Gasoline Alley discriminated against him based on his race. Mr. Marsh states a Bar Manager falsely accused him of smoking marijuana, but never gave him an opportunity to "explain the situation." Moreover, he claimed two Caucasian employees were intoxicated at work and, while they were initially terminated, Gasoline Alley eventually rehired both employees. There is no Notice of Right to Sue from the Equal Employment Opportunity Commission (E.E.O.C.) referenced or attached to the Complaint.[2]

### Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action or party under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, four of the employees named in this action are dismissed pursuant to section 1915(e).

---

[2]  Where, as here, Mr. Marsh appears to have initially filed charges with the OCRC, the time period for filing with the EEOC is extended to 300 days of the alleged unlawful employment practice or within 30 days after receipt of notice that the OCRC has terminated its proceedings, whichever is earlier. 42 U.S.C. § 2000e-5(e). Because this is not a jurisdictional bar, the Court cannot *sua sponte* dismiss the Complaint at this stage for failing to exhaust administrative remedies as the issue may be raised as an affirmative defense in the defendant's answer. *See Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976) (failure to exhaust administrative remedies is not a jurisdictional bar to Title VII action); *see also Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 392 (1982) (filing timely charge with EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that is subject to waiver, estoppel, and equitable tolling).

## Title VII
## Employer Liability

Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A person aggrieved by such discrimination may bring a civil action against the "employer." 42 U.S.C. § 2000e-5(b). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees [...] and *any agent of such person*." 42 U.S.C. § 2000e(b) (emphasis added). While "agent" is not defined by Title VII, it has been interpreted as "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir.1994) (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir.1993)).

The Sixth Circuit has held that an employee/supervisor, who does not otherwise qualify as an "employer," cannot be held individually liable under Title VII. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 404 (6th Cir.1997). None of the defendants named in this action satisfies the statutory definition of an employer. Moreover, Mr. Marsh did not name any of these individuals in his OCRC charge. *See e.g., Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F.2d 1155-57 (6th Cir. 1988) (failure to name a defendant as a respondent before the EEOC strips the court of Title VII jurisdiction). Thus, Al Kerkian, Susan Kerkian, Mike Milbert, Nedra Johnson and Dave Calendar cannot be named as party defendants in this Title VII action and are dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Marsh's motion to proceed *in forma pauperis* is **granted** and this action is dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e). The Court certifies that an appeal from this decision could not be taken in good faith.[3]

**IT IS SO ORDERED**.

Dated: October 7, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[3] 28 U.S.C. § 1915(a)(3) provides: "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."

5